IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 6, 2002 Session

## David Wayne Mayberry v. Janilyn Rhea Mayberry

**Direct Appeal from the Chancery Court for Rutherford County**
**No. 98DR-1668     Don R. Ash, Chancellor**

_____

**No. M2002-00424-COA-R3-CV - Filed June 17, 2003**

_____

This appeal involves a petition to modify a parenting plan.  The trial court found there to be a material and substantial change in circumstances and that it was in the best interest of the minor children that Mother be designated the primary residential custodian with full decision making authority.  Father was awarded more than standard visitation.  Father appeals and raises one issue on appeal.  For the following reasons, we affirm.

**Tenn. R. App. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Robert O. Bragdon, Murfreesboro, TN, for Appellant

Tony L. Maples, Murfreesboro, TN, for Appellee

**OPINION**

**Facts and Procedural History**

David Wayne Mayberry ("Father") and Janilyn Rhea Mayberry ("Mother") were granted a divorce on October 28, 1999.  At this time, the court approved a parenting plan whereby the parties would share parenting time equally and joint decision making authority regarding their two minor children.

On February 28, 2001, Father filed a petition for contempt against Mother and for modification of the parenting plan.  Specifically, Father alleged that he had performed almost all the parenting responsibilities regarding the children's "school, health, and extra-curricular activities with little or no involvement from [Mother]."  Mother filed her answer and counter-petition on April 16, 2001, denying that there had been a substantial and material change in circumstance which would

require a modification of the existing parenting plan. Mother further denied that Father's proposed parenting plan was in the best interest of the minor children. In addition, Mother alleged that Father was in contempt for his failure to pay child support as ordered and for his failure to relinquish his interest in the UTMA[1] account of Mother's child from a previous relationship. Father filed an amended petition for contempt and modification of parenting plan and filed his answer to Mother's counter-petition on June 6, 2001. Thereafter, on August 9, 2001, Mother filed her answer to Father's amended petition.

The trial was held on October 16 and 17 of 2001. The lower court found there to be a "material and substantial change in circumstances" such that the prior parenting plan was no longer workable. After considering the best interest of the minor children and the comparative fitness of the parents, the court found that Mother was the proper party to be designated as the primary residential custodian. In addition, the court granted Mother full decision-making authority regarding matters of education, health care, sports activities and religion.

Thereafter, Father filed a motion to alter or amend the judgment of the trial court alleging that the lower court incorrectly applied the facts of the case in its comparative fitness analysis. At the December 17, 2001 hearing, the trial court amended the parenting plan in part regarding Father's visitation with the children, but denied Father's request for a new trial on the issue of who should be the primary residential custodian. Thereafter, Father timely filed this appeal and raises the following issue for our review.

## Issue

I.    Whether the lower court erred in its application of the best interest test and comparative fitness analysis when it awarded Mother custody of the parties' two minor children.

## Standard of Review

Decisions involving matters of child custody are "factually driven and require the careful consideration of numerous factors." Adelsperger v. Adelsperger, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997) (citations omitted). Further, the trial court "had the benefit of being able to observe the manner and demeanor of these two parents and all of the other witnesses who testified in this case," while this Court is limited to a review of the cold printed word. Branch v. Thompson, No. M2001-01231-COA-R3-CV, 2002 Tenn. App. LEXIS 821, *22 (Tenn. Ct. App. Nov. 26, 2002). Consequently, trial courts are given wide discretion in determining these matters. Wilson v. Wilson, No. E2000-01374-COA-R3-CV, 2001 Tenn. App. LEXIS 415, *6 (Tenn. Ct. App. June 22,2001) (citing Gaskill v. Gaskill, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). We review the trial court's conclusions of law "'under a pure *de novo* standard of review, according no deference to the

---

[1] UTMA is an acronym for the Uniform Transfers to Minors Act, which is found in Tennessee Code Annotated section 35-7-201 et seq.

conclusions of law made by the lower courts.'" Kendrick v. Shoemake, No. E2000-01318-SC-R11-CV, 2002 Tenn. LEXIS 489, at *6 (Tenn. Nov. 1, 2002) (citing S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001). With respect to the trial court's findings of fact, our review is *de novo* upon the trial court's record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d).

## Law and Analysis

In the only issued raised on appeal, Father argues that the trial court erred in its application of the best interest test and the comparative fitness analysis and that the preponderance of the evidence weighed in favor of designating him as the primary residential parent. Specifically, Father alleges that the trial court failed to properly weigh the evidence, that the trial court abused its discretion, and that the trial court's decision was "arbitrary and capricious without regard to the best interests of the minor children."

### *Modification of Custody*

A party seeking to change an initial custody determination must "show that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." Blair v. Bandenhope, 77 S.W.3d 137, 139 (Tenn. 2002); see also Kendrick v. Shoemake, 90 S.W.3d 566, 570 (Tenn. 2002). Accordingly, the threshold issue "is whether a material change in circumstances has occurred after the initial custody determination." Kendrick, 90 S.W.3d at 570 (citing Blair, 77 S.W.3d at 150).

### *Material Change in Circumstances*

The law is well settled in this state that once a custody decision is made and implemented, it is "res judicata upon the facts in existence or reasonably foreseeable when the decision is made." Solima v. Solima, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998) (citations omitted); see also Hoalcraft v. Smithson, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999) (citing Long v. Long, 488 S.W.2d 729 (Tenn. Ct. App. 1972)). These decisions, however, remain within the control of the court and may be "subject to such changes or modification as the exigencies of the case may require." TENN. CODE ANN. § 36-6-101(a)(1) (2002). As we have previously stated, "there is a strong presumption in favor of the existing custody arrangement," Hoalcraft, 19 S.W.3d at 828 (citations omitted), and the party seeking the modification must prove "by a preponderance of the evidence a material change in circumstance." TENN. CODE ANN. § 36-6-101(a)(2)(B) (2002).

> While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." Blair, 77 S.W.3d at 150 (citations omitted). We note that a parent's change in circumstances may be a material change in

circumstances for the purposes of modifying custody if such a change affects the child's well-being.

Kendrick, 90 S.W.3d at 570. Additionally, a "material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or circumstances which make the parenting plan no longer in the best interest of the child." TENN. CODE ANN. § 36-6-101(a)(2)(B).

In the case *sub judice*, the trial court, in its order dated November 15, 2001, found that a "material and substantial change in circumstances" had occurred such that the "present parenting plan is no longer workable." In its ruling from the bench, the court stated that the parenting plan "simply will not work because of their refusal to treat each other with respect and to look out for the best interest of the children." Because neither party raised an issue with respect to the trial court's finding that there had been a material change in circumstances, we will not address this issue and will proceed directly to the best interest test and comparative fitness analysis.

### *Best Interest of the Child & Comparative Fitness Analysis*

Once a material change in circumstances has been shown, "it must then be determined whether the modification is in the child's best interests." Kendrick, 90 S.W.3d at 570. "[I]n child custody cases, the child's best interest is the paramount consideration. It is the polestar, the alpha and the omega." Contreras v. Contreras, 831 S.W.2d 288, 289 (Tenn. Ct. App. 1991) (citing Bah v. Bah, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983)).

In determining which custody arrangement is in the best interest of the child, the court engages in a comparative fitness analysis. Barnes v. Barnes, No. W2002-00428-COA-R3-CV, 2002 WL 31387268, *3 (Tenn. Ct. App. Oct. 23, 2002) (citing Bah v. Bah, 668 S.W.2d at 666). This determination should be made according to the factors enumerated in Tennessee Code Annotated section 36-6-106, which states in pertinent part:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . .;

(4) The stability of the family unit of the parents;
(5) The mental and physical health of the parents;
(6) The home, school and community record of the child;
(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of

older children should normally be given greater weight than those of younger children; (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. . . ; (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

TENN. CODE ANN.§ 36-6-106(a)(1)-(10). In the case *sub judice*, the trial court conducted the required analysis and made the following findings of fact. With regard to the first factor, the trial court found as follows:

Mr. Mayberry, you may be a great father, but you have been a terrible parent. This controlling issue here is obscene. You've used the parenting plan as a hammer to harass and abuse this woman and these children. You took something that was supposed to be good and made it something bad. I don't understand that. To be a good father – and I'm not – I believe you love your children. I'll talk about that in a minute, but to do this, to control or try to control like this is almost obsessive. I don't understand that. That's not treating your children with love.

. . .

And then, Ms. Tucker, looking at you – at your situation, you worked six days a week. Just like Mr. Bragdon said, you had it good and easy. He took care of the children every day while you were at work. You decide its more important to smoke around your children when you know it causes health problems to them. You're more concerned about your social life than you are taking care of your children. That's exactly what's going on. You hung around people that were not very nice people, obviously, somebody that would stalk you.

. . .

So really to be quite honest, neither of ya'll, in my opinion, are particularly fit to raise these children, but I don't have an option. I don't have anywhere else to go.

The court later stated that it was going to give both parties "the benefit of the doubt and say that both of you love your children, but that's not – to be quite honest that's not fairly clear. It would seem that you enjoy to fight more than you do about the love of your children." to the second factor, the trial court found that the initial parenting plan had the parents basically spending equal amounts of time with the children and that neither parent was the primary caretaker. Next, the trial court found that the children were not in a stable environment where "one person is the dictator and the other is the servant." As to the fifth factor, the mental and physical health of the parents, the trial court found that he was "terrified about the environment these children are being raised in." In regard to the sixth factor, the trial court found it amazing that "children are being abused by both parents emotionally, they can do well in school, and that says a positive thing about this Lancaster school." The court

then applauded Mr. Mayberry for selecting the school the children attend, declaring that Mr. Mayberry had made a "wise choice" of schools. The seventh factor, the reasonable preference of the children, was not a consideration in this case as the children were under twelve and did not testify. At this point the trial court stated

> And if I go through all that it ends up tied three, three in regard to where the children are supposed to live, but then I'm supposed to look at past and future performance of parenting responsibility, willingness and ability to facilitate and encourage a relationship between child and other parent.

In regard to the final factor, the court stated, "Mr. Mayberry, I am convinced beyond a doubt that you will not facilitate an ongoing relationship with this woman and her family. That's obvious from this, and I hate to say that. That will harm your children." At the conclusion of the comparative fitness analysis, the court stated "[b]ased upon all those things then, what I'm going to do is, I'm going to designate, sadly, Ms. Tucker [Mrs. Mayberry], as the primary residential parent."

After a thorough review of the record, we find that the evidence supports the trial court's conclusions. The trial court heard all the testimony, observed the witnesses and made the above findings of fact in accordance with Tennessee Code Annotated section 36-6-106. The trial court "had the benefit of being able to observe the manner and demeanor of these two parents and all of the other witnesses who testified in this case," while this Court is limited to a review of the cold printed word. Branch v. Thompson, No. M2001-01231-COA-R3-CV, 2002 Tenn. App. LEXIS 821, *22 (Tenn. Ct. App. Nov. 26, 2002). Therefore, we are of the opinion that the trial court committed no error and that the evidence does not preponderate against the trial court's decision.

**Conclusion**

Accordingly, we affirm. Costs on appeal taxed to the Appellant, David Wayne Mayberry, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE